**2025-2168, 2026-1283**

# United States Court of Appeals for the Federal Circuit

PROXENSE, LLC,

*Appellant*,

v.

APPLE INC., MICROSOFT CORPORATION,

*Appellees*.

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Case Nos. IPR2024-00233, IPR2024-01334, IPR2024-00846

## APPELLEES' RESPONSE BRIEF

Erika H. Arner
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Ave., NW
Washington, DC 20001
(571) 203-2754

Daniel C. Tucker
Joseph M. Schaffner
Taylor L. Stark
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
(571) 203-2700

*Counsel for Appellee Apple Inc.*

Lauren A. Degnan
W. Karl Renner
Christopher Dryer
Benjamin J. Christoff
FISH & RICHARDSON PC
1000 Maine Ave. SW, Suite 1000
Washington, DC 20024
(202) 783-5070

*Counsel for Appellee Microsoft Corporation*

## REPRESENTATIVE CLAIM AT ISSUE

1. A method comprising:

persistently storing biometric data of a user and a plurality of codes and other data values comprising a device ID code uniquely identifying an integrated device and a secret decryption value in a tamper proof format written to a storage element on the integrated device that is not capable of being subsequently altered;

responsive to receiving a request for a biometric verification of the user, receiving scan data from a biometric scan;

comparing the scan data to the biometric data to determine whether the scan data matches the biometric data;

responsive to a determination that the scan data matches the biometric data, wirelessly sending one or more codes and other values from the plurality of codes and other data values for authentication to a third party that operates a trusted authority, wherein the one or more codes and other data values includes the device ID code; and

receiving, at an application, an access message from the trusted authority indicating that the trusted authority successfully authenticated the one or more codes and other data values sent to the third party and allowing the user access to the application.

Appx107 (10:5-27).

## CERTIFICATE OF INTEREST

Counsel for Appellee Apple Inc. certifies the following:

1. Provide the full names of all entities represented by undersigned counsel in this case.

   **Apple Inc.**

2. Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   **None/Not Applicable.**

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   **None/Not Applicable.**

4. List all law firms, partners, and associates that (a)appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   **Duane Morris LLP: D. Stuart Bartow, Monte T. Squire, Paul H. Belnap, Philip W. Woo**

   **Finnegan, Henderson, Farabow, Garrett & Dunner, LLP: Cory C. Bell, Kara A. Specht, Safiya Aguilar, Shawn S. Chang**

5. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   **Yes (*see* Apple Inc.'s Notice of Related Case Information filed at Dkt. 4).**

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

   **None/Not Applicable.**

Dated: July 13, 2026

*/s/ Erika H. Arner*
Erika H. Arner

## CERTIFICATE OF INTEREST

Counsel for Appellee Microsoft Corporation certifies the following:

1. Provide the full names of all entities represented by undersigned counsel in this case.

   **Microsoft Corporation**

2. Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   **None/Not Applicable.**

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   **None/Not Applicable.**

4. List all law firms, partners, and associates that (a)appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   **Fish & Richardson P.C.: Jonathan Driesslein, Roberto J. Devoto (no longer with firm), Usman A. Khan**

5. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   **Yes (*see* Microsoft's Notice of Related Case Information filed at Dkt. 6 in No. 26-1283 prior to this Court's consolidation order).**

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

   **None/Not Applicable.**

Dated: July 13, 2026

*/s/ Lauren A. Degnan*
Lauren A. Degnan

# TABLE OF CONTENTS


STATEMENT OF RELATED CASES .................... xi

JURISDICTIONAL STATEMENT .................... 1

I. PRELIMINARY STATEMENT .................... 2

II. STATEMENT OF THE ISSUES .................... 3

III. STATEMENT OF THE CASE .................... 3

A. The ’954 Patent .................... 4

B. Overview of Patent Office Proceedings .................... 5

C. The Apple and Microsoft IPR Proceedings .................... 7

D. Developments in the Co-Pending ’730 EPR and ’730 IPR Proceedings .................... 8

E. The Board’s Apple IPR Decision .................... 11

F. The Examiner’s Further Rejections in the ’730 EPR .................... 12

G. Proxense’s Attempts To Inject the ’730 EPR into the Microsoft IPR .................... 13

H. Proxense’s Further Amendments in the ’730 EPR .................... 15

I. The Board’s Microsoft IPR Decision .................... 16

IV. SUMMARY OF THE ARGUMENT .................... 18

V. ARGUMENT .................... 20

A. Standard of Review .................... 20

B. The Board Correctly Rejected Proxense’s Construction That Contradicts the Intrinsic Record .................... 21

1. The Claims Do Not Require Transactions Where Applications Are Parties .................... 22

2. The Specification Does Not Require Transactions Where Applications Are Parties ....................26

C. The Board Properly Complied with the APA ....................30

1. Proxense's Challenge to the EPR Stay Is Moot, and the Court Lacks Jurisdiction To Consider It ....................31

2. In the Microsoft IPR, the Board Did Not Abuse Its Discretion or Violate the APA by Declining To Hear Proxense's Untimely Arguments About Canceled Claims in a Different Proceeding ....................34

3. In the Apple IPR, the Patent Office Correctly Arrived at Consistent Conclusions ....................39

D. Proxense's Constitutional Challenge Is Inessential to This Appeal and Foreclosed by Precedent ....................44

1. The Court Need Not Reach This Issue Because Other Issues Render It Unnecessary ....................44

2. The Supreme Court and Federal Circuit Have Already Rejected Proxense's Appointments Clause Argument ....................47

VI. CONCLUSION .................... 51

# TABLE OF AUTHORITIES

## Cases

*Ajinomoto Co. v. Int'l Trade Comm'n*,
932 F.3d 1342 (Fed. Cir. 2019) ....................25

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
314 F.3d 1313 (Fed. Cir. 2003) ....................23

*Arthrex, Inc. v. Smith & Nephew*,
35 F.4th 1328 (Fed. Cir. 2022) .................... passim

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
672 F.3d 1335 (Fed. Cir. 2012) ....................25

*Bennett v. Spear*,
520 U.S. 154 (1997)....................42

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) ....................26

*Bilstad v. Wakalopulos*,
386 F.3d 1116 (Fed. Cir. 2004) ....................20

*BlackLight Power, Inc. v. Rogan*,
295 F.3d 1269 (Fed. Cir. 2002) ....................41

*Bly v. Shulkin*,
883 F.3d 1374 (Fed. Cir. 2018) ....................32

*Bot M8 LLC v. Sony Interactive Ent. LLC*,
66 F.4th 1380 (Fed. Cir. 2023) ....................38

*Chamberlain Grp., Inc. v. One World Techs., Inc.*,
944 F.3d 919 (Fed. Cir. 2019) ....................37

*Ciena Corp. v. Oyster Optics, LLC*,
958 F.3d 1157 (Fed. Cir. 2020) ....................46

*Connell v. Sears, Roebuck & Co.*,
722 F.2d 1542 (Fed. Cir. 1983) ....................36

*Durango Assocs., Inc. v. Reflange, Inc.*,
912 F.2d 1423 (Fed. Cir. 1990) ....................................................................33

*Epos Techs. Ltd. v. Pegasus Techs. Ltd.*,
766 F.3d 1338 (Fed. Cir. 2014) ....................................................................29

*eSimplicity, Inc. v. United States*,
122 F.4th 1373 (Fed. Cir. 2024) ....................................................................31

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010)....................................................................................20

*Heron Therapeutics, Inc. v. Azurity Pharms., Inc.*,
No. 24-830, 2025 WL 3022166 (D. Del. Oct. 29, 2025)..................................25

*Housey Pharms., Inc. v. Astrazeneca UK Ltd.*,
366 F.3d 1348 (Fed. Cir. 2004) ....................................................................23

*In re Becker*,
101 F.2d 557 (C.C.P.A. 1939) ................................................................ 37, 41

*In re Ellis*,
86 F.2d 412 (C.C.P.A. 1936) .......................................................................41

*In re Knauf Insulation, Inc.*,
No. 22-166, 2022 WL 17098755 (Fed. Cir. Nov. 22, 2022) ............................34

*In re Magnum Oil Tools Int'l Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) ....................................................................38

*In re McDonald*,
43 F.4th 1340 (Fed. Cir. 2022) .....................................................................36

*In re Paulsen*,
30 F.3d 1475 (Fed. Cir. 1994) ......................................................................36

*In re Rambus Inc.*,
694 F.3d 42 (Fed. Cir. 2012) ........................................................................25

*In re Ruschig*,
379 F.2d 990 (C.C.P.A. 1967) ................................................................ 37, 41

*In re Vivint, Inc.*,
14 F.4th 1342 (Fed. Cir. 2021) ....................................................................42

*Incept LLC v. Palette Life Scis., Inc.*,
77 F.4th 1366 (Fed. Cir. 2023) ....................................................................36

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) .............................................................. 20, 37

*Liebel-Flarsheim v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) ......................................................................29

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
587 U.S. 370 (2019)...........................................................................................31

*Pers. Audio, LLC v. CBS Corp.*,
946 F.3d 1348 (Fed. Cir. 2020) ....................................................................32

*Personalized Media Commc'ns, LLC v. Apple Inc.*,
952 F.3d 1336 (Fed. Cir. 2020) ....................................................................20

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................................................................20

*Piano Factory Grp., Inc. v. Schiedmayer Celesta GmbH*,
11 F.4th 1363 (Fed. Cir. 2021) ....................................................................46

*Realtime Data, LLC v. Iancu*,
912 F.3d 1368 (Fed. Cir. 2019) ....................................................................36

*Regents of the Univ. of Cal. v. Broad Inst., Inc.*,
136 F.4th 1367 (Fed. Cir. 2025) ..................................................................31

*ResQNet.com, Inc. v. Lansa, Inc.*,
346 F.3d 1374 (Fed. Cir. 2003) ....................................................................25

*Schwendimann v. Neenah, Inc.*,
82 F.4th 1371 (Fed. Cir. 2023) ....................................................................37

*Shockwave Med., Inc. v. Cardiovascular Sys., Inc.*,
142 F.4th 1371 (Fed. Cir. 2025) ..................................................................20

*Smith v. Barry*,
502 U.S. 244 (1992) ........................................ 33

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,
753 F.3d 1291 (Fed. Cir. 2014) ........................................ 23

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021) ........................................ 20, 46, 48

*United States v. Eaton*,
169 U.S. 331 (1898) ........................................ passim

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007) ........................................ 27, 30

*Vicor Corp. v. SynQor, Inc.*,
869 F.3d 1309 (Fed. Cir. 2017) ........................................ 42

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
853 F.3d 1272 (Fed. Cir. 2017) ........................................ 26, 27, 29

**P.T.A.B. Cases**

*Apple Inc. v. Proxense, LLC*,
IPR2024-00232 (P.T.A.B. Apr. 15, 2025) ........................................ 32

*Google LLC v. Proxense, LLC*,
IPR2024-00232 (P.T.A.B. July 24, 2024) ........................................ 43

**Constitutional Provisions**

U.S. CONST. art. II, § 2, cl. 2 ........................................ 21, 49

**Statutes**

5 U.S.C. § 706 ........................................ 20

28 U.S.C. § 1295 ........................................ 33

35 U.S.C. § 3 ........................................ 49, 50

35 U.S.C. § 6 ........................................................................................ 49, 50

35 U.S.C. § 325 ........................................................................................34

**Rules**

Fed. R. App. P. 3 ........................................................................................33

**Regulations**

37 C.F.R. § 42.73 ........................................................................................43

**Other Authorities**

Manual of Patent Examining Procedure § 2173.06 ...............................................36

## STATEMENT OF RELATED CASES

No appeal in or from Case Nos. IPR2024-00233 and IPR2024-01334 ("the Apple IPR") or IPR2024-00846 ("the Microsoft IPR") from the Patent Trial and Appeal Board ("Board") has previously come before this or any other appellate court.

Pursuant to Federal Circuit Rule 47.5(a), counsel for Apple Inc. and Microsoft Corporation state that the following cases will directly affect or be affected by this Court's decision: *Proxense, LLC v. Apple Inc.*, No. 6-24-cv-00143 (W.D. Tex.); *Proxense, LLC v. Microsoft Corp.*, No. 6-23-cv-00319 (W.D. Tex.).

Counsel for Appellees are unaware of any other case that will directly affect or be directly affected by this appeal under Fed. Cir. R. 47.5.

# JURISDICTIONAL STATEMENT

As discussed below, this Court does not have jurisdiction to consider Proxense's dispute over a stay issued in IPR2024-00232, a case Proxense did not appeal. *See* § V.C.1, *infra*.

## I. PRELIMINARY STATEMENT

None of the numerous issues Proxense raises on appeal withstands scrutiny. The Board followed the law and arrived at the correct conclusions. Its judgment should be affirmed.

Proxense's claim construction argument is refuted by all available evidence. It reads in a limitation found nowhere in the claims and excludes multiple disclosed embodiments. Both the Board and an examiner rejected this construction as inconsistent with the claims' plain language. This Court should do the same.

Proxense's procedural disputes stand even further afield. Proxense first asks the Court to set aside a stay that ended over a year ago and was never entered in the appealed cases. The issue is moot, and the Court has no jurisdiction to hear it. Nor did the Board err in rejecting Proxense's late argument foreclosed by case law. The Board heard Proxense's position—it just found the argument without merit. Finally, Proxense charges the Patent Office with reaching inconsistent conclusions, only to ignore the very document confirming the agency's consistency.

Proxense's constitutional challenge is both incorrect and inessential to this appeal. Proxense did not raise this dispute in one of the appealed cases, allowing the Court to affirm without reaching the issue. On the merits, this Court and the Supreme Court have already rejected Proxense's Appointments argument. Either way, the Court should affirm.

## II. STATEMENT OF THE ISSUES

1. Did the Board properly decline to limit the ’954 claims to “transaction[s]” where a user and an “application” are “principal parties,” when that requirement does not appear in the claims, excludes disclosed embodiments, and conflicts with amendments Proxense made in a related proceeding?

2. Does the Court have jurisdiction to review the propriety of a stay order issued in a different proceeding not on appeal that has already been lifted?

3. Did the Patent Office reach “inconsistent results” across different proceedings when the Board and an examiner rejected similar claims in different cases under the same art, and where the Board properly rejected Proxense’s late argument foreclosed by precedent?

4. Does the Court need to address Proxense’s constitutional argument when Proxense forfeited it in the Microsoft IPR and other issues on appeal render it unnecessary? If so, did the Patent Office violate the Appointments Clause when the Supreme Court and this Court have endorsed the type of “temporary” and “limited” delegation that occurred here?

## III. STATEMENT OF THE CASE

Appellees provide this counterstatement to discuss facts relevant to the issues Proxense raises on appeal.

### A. The ’954 Patent

The ’954 patent describes techniques for authenticating users’ biometric data. *E.g.*, Appx94 (Title, Abstract); Appx101 (Fig. 6). The claimed process generally compares received biometric data to stored user information. Appx107 (10:5-16). When the system detects a match, it sends a code identifying a biometric device (e.g., a phone) to a “third party that operates a trusted authority.” Appx107 (10:17-22, 10:41-43). This authority authenticates the code and sends an access message to an “application,” allowing the user to access the application. Appx107 (10:23-27). Common applications include ATMs, casino machines, and computer software. *E.g.*, Appx105 (6:18-26); Appx107 (10:44-47).

The ’954 patent describes several examples of these transactions and applications. One involves a generic “bank transaction[],” where an ATM application facilitates a transaction between a user and a bank as parties. Appx103 (1:29-31). Other transactions include exchanges between a user and a grocery store (Appx105 (6:48-51)) and a user and a casino (Appx105-06 (6:64-7:4)). In these transactions, the parties are the user and the host entity (i.e., the grocery store or the casino). *See* Appx13-14 (Board discussing these examples). In many of these examples, the intermediary application (e.g., the ATM machine or casino machine) is not a party to the transaction. *Id.*

The ’954 patent is a continuation of U.S. Patent No. 8,352,730. Appx94. The claims of the ’954 patent closely resemble those of the ’730 patent as originally issued. *Compare, e.g.*, Appx107 (10:5-27), *with* Appx9093 (9:12-43). Among other minor differences, the originally-issued ’730 patent claims added Markush groups limiting the claims to certain biometric information and application types. Appx9093 (9:12-43).

### B. Overview of Patent Office Proceedings

Proxense asserted the ’730 and ’954 patents against several defendants, prompting various challenges at the Patent Office. Appx2363-64; Appx2563.

In January 2024, Google sought *inter partes* review of the ’730 and ’954 patents (IPR2024-00232 and IPR2024-00233, respectively). *See* Appx3214 (’730); Appx9107 (’730); Appx234 (’954); Appx305 (’954). The petitions asserted grounds over Ludtke and Kon:

| Case | Patent | Claims | Reference(s) |
|---|---|---|---|
| IPR2024-00232 | ’730 | 1-2, 4-6, 8-9, 11-12, 14-17 | Ludtke |
| | | 3, 10, 13 | Ludtke, Kon |
| IPR2024-00233 | ’954 | 1-2, 4-7, 10, 12-13, 15-16, 18-19, 22-27 | Ludtke |
| | | 3, 14, 17 | Ludtke, Kon |

*See* Appx9107 (’730); Appx234 (’954). Apple filed substantively identical petitions (IPR2024-01333 and IPR2024-01334, respectively), seeking joinder with Google’s IPRs. *See* Appx3214 (’730); Appx3319 (’954); Appx2347 (’954). The Board instituted review and joined Apple to Google’s IPRs. *See* Appx2347

(joinder to IPR2024-00233); Appx3220 (joinder to IPR2024-00232). Google later settled, leaving Apple as the sole petitioner in those IPRs. Appx2485.

Microsoft likewise sought *inter partes* review of the ’730 and ’954 patents. For the ’730 patent, Microsoft challenged claims 1-17 over combinations of Burger and Robinson (IPR2024-00775). Appx9202.[1] For the ’954 patent, Microsoft challenged claims 1-29 over Burger, Robinson, and Orsini (IPR2024-00846):

| Case | Patent | Claims | Reference(s) |
|---|---|---|---|
| IPR2024-00775 | ’730 | 1-2, 4-9, 11-12, 14-17 | Burger |
| | | 3, 10, 13 | Burger, Robinson |
| IPR2024-00846 | ’954 | 1-2, 4-5, 7-13, 15-16, 18-24, 26-29 | Burger |
| | | 3, 14, 17 | Burger, Robinson |
| | | 6, 25 | Burger, Orsini |

Appx9202 (’730); Appx5031 (’954). The Board instituted review of these Burger-based petitions. *See* Appx8419 (IPR2024-00846); Appx9421 (IPR2024-00775).

In the meantime, a June 2022 reexamination Samsung filed against the ’730 patent (“the ’730 EPR”[2]) had reached advanced stages. *See* Appx2633; Appx2745. That reexamination request challenged claims 1-17 under

---

[1] Microsoft also filed a second petition (IPR2024-01326) copying Google’s ’730 petition asserting Ludtke and Kon (IPR2024-00232). Appx9315. Microsoft asked to join Google’s IPR only if the Board denied Microsoft’s earlier IPR2024-00775 petition. Appx2343. The Board denied Microsoft’s conditional IPR2024-01326 petition. *See* Appx8907.

[2] Proxense refers to this proceeding as the “052 EPR,” where “052” reflects the last three digits of the case number. For consistency with the naming convention of the remaining proceedings, Appellees refer to this as the ’730 EPR, reflecting the patent at issue in that proceeding.

combinations of Ludtke, Okereke, Robinson, and/or Scott. *See, e.g.*, Appx2658. In ensuing office actions, the Patent Office rejected claims 1-17 of the '730 patent as anticipated by Ludtke and/or obvious over combinations of Ludtke, Okereke, and Robinson. *See* Appx2590-612; Appx2767-89; Appx3131-56.

A summary of the pertinent proceedings appears below.[3] The yellow highlighting indicates the cases in this appeal.

| Case No. | Patent | Filer | Claims Challenged | References |
|---|---|---|---|---|
| 90/015,052 | '730 | Samsung | 1-17 | Ludtke, Okereke, Robinson |
| IPR2024-00232 | '730 | Google | 1-6, 8-17 | Ludtke, Kon |
| IPR2024-01333 | '730 | Apple | 1-6, 8-17 | Ludtke, Kon |
| IPR2024-00775 | '730 | Microsoft | 1-17 | Burger, Robinson |
| IPR2024-01326 | '730 | Microsoft | 1-6, 8-17 | Ludtke, Kon |
| IPR2024-00233 | '954 | Google | 1-7, 10, 12-19, 22-27 | Ludtke, Kon |
| IPR2024-01334 | '954 | Apple | 1-7, 10, 12-19, 22-27 | Ludtke, Kon |
| IPR2024-00846 | '954 | Microsoft | 1-29 | Burger, Robinson, Orsini |

### C. The Apple and Microsoft IPR Proceedings

The Board instituted both Apple's and Microsoft's IPRs. Appx2301; Appx2354; Appx8419. In its institution decisions, the Board relied on its analysis in the Samsung '730 IPR to construe "trusted authority" as "a trusted authority that is an entity separate from the parties to a transaction." Appx2272-75 (discussing

[3] Samsung also challenged the '730 patent in IPR2021-01444, where the Board denied institution. *See* Appx10 n.4.

IPR2021-01444); Appx8397-99 (same). Apple and Microsoft agreed with this construction. Appx2443-44; Appx8576.

Proxense also nominally agreed with the Board's construction but, under the guise of clarification, tried to require the "user" and the "application" to be "parties" to the transaction. *See* Appx2367-68 (stating "Patent Owner agrees with this construction" but requiring the "parties" to include the "application"); Appx2497-98 ("[T]he principal parties a[re] the user . . . and the application being accessed."); Appx8438-39 (same in Microsoft IPR). Appellees disputed Proxense's further requirement as inconsistent with the intrinsic and extrinsic evidence. *See* Appx2443-45 (citing Appx98-99 (Figs. 3-4); Appx105 (6:18-26, 6:37-51); Appx2465-67 (¶¶11-14)); Appx8576-82 (citing Appx104-05 (4:29-39, 6:18-26); Appx5802-03 (¶113); Appx6135; Appx8618-23 (¶¶9-18)).

### D. Developments in the Co-Pending '730 EPR and '730 IPR Proceedings

Before the Board ruled on the '954 petitions, the '730 EPR continued to progress. By March 2025, the '730 EPR examiner had thrice rejected the '730 claims over combinations of Ludtke, Okereke, and Robinson:

| Claims | Rejection | Reference(s) |
|---|---|---|
| 1-2, 4-9, 11-12, 14-17 | § 103 | Ludtke, Okereke |
| 3, 10, 13 | § 103 | Ludtke, Okereke, Robinson |
| 15-17 | § 102 | Ludtke |

*See* Appx2590-612; Appx2767-89; Appx3131-56. In the examiner's view, Ludtke teaches every element of the independent '730 claims. *Id.* She applied Okereke only in the alternative for one element in claim 1. *E.g.*, Appx2771-72.

In a March 2025 final office action, however, the examiner also proposed an amendment. *See* Appx3156. The claims might be allowable, the examiner suggested, if Proxense amended them to recite receiving an access message "by an application." *Id.* (emphasis removed).

The examiner's suggestion had cascading consequences in the pending '730 patent proceedings. On March 27, 2025, the Board stayed the '730 EPR in the Ludtke-based '730 IPRs due to the similarities in grounds. *See* Appx3213-17 (ordering the stay in IPR2024-00232 and IPR2024-01333). The Board did not issue a stay in Microsoft's Burger-based '730 IPR (IPR2024-00775), however. Nor did the Board order a stay in the Apple or Microsoft IPRs involving the '954 patent on appeal (IPR2024-00233, IPR2024-01334, IPR2024-00846).

Proxense moved to moot the stay by requesting adverse judgment in each of the '730 IPRs. *See* Appx3220-21; Appx9447-48. The Board granted the requests in April 2025, canceling claims 1-17 of the '730 patent and lifting the stay of the '730 EPR. *See* Appx3219-21 (canceling claims 1-6 and 8-17); Appx9446-48 (canceling claims 1-17). These judgments disposed of all the '730 IPRs (IPR2024-00232, IPR2024-01333, IPR2024-00775).

In the ’730 EPR, Proxense amended the independent claims to recite receiving an access message “by an application,” as the examiner had proposed. *See* Appx9424-29. The examiner entered the amendment, withdrew the rejections over Ludtke, and issued new rejections over Burger:

| Claims | Rejection | Reference(s) |
|---|---|---|
| 1-2, 4-9, 12, 14-17 | § 102 | Burger |
| 11 | § 103 | Burger |
| 3, 10, 13 | § 103 | Burger, Robinson |

*See* Appx3163-64 (entering amendment); Appx3167-85 (rejecting the amended claims). The examiner also rejected claims 1-17 as estopped due to Proxense’s adverse judgment in IPR2024-00775 (Microsoft’s ’730 IPR). Appx3185-86.

The parties disputed the effects of these developments. In the Apple IPR, Apple argued that the adverse judgment in IPR2024-00232 (Apple’s ’730 IPR) collaterally estopped Proxense from defending the ’954 claims. *See* Appx3096-3100.[4] Proxense argued that the examiner’s withdrawal of the Ludtke rejections in the ’730 EPR confirmed the ’954 claims’ patentability. *See* Appx41-43; Appx3118-23. In the Microsoft ’954 IPR, Microsoft moved to stay the ’730 EPR to avoid the inefficiency and risk of conflicting decisions inherent in having nearly identical claim sets and the same prior art evaluated in two parallel proceedings.

[4] Microsoft did not advance this argument because the Ludtke invalidity grounds at issue in IPR2024-00232 were not at issue in Microsoft’s ’730 IPR.

Appx8636-40. The Board denied Microsoft's motion, finding its power to stay other proceedings limited to those involving the same patent. Appx8737-38.

### E. The Board's Apple IPR Decision

The Board issued its final written decision in the Apple IPR for the '954 patent on June 17, 2025, finding all challenged claims unpatentable. Appx1. The Board maintained its construction of "trusted authority" and rejected Proxense's narrower interpretation requiring an application to be a party to the transaction. Appx10-15. In the Board's view, nothing in the intrinsic or extrinsic evidence supported these added limitations. *Id.* The plain meaning of the claims did not compel Proxense's construction (Appx11-12), and nothing in the specification required it either (Appx12-15). To support its analysis, the Board identified examples in the '954 patent where an application was not a party to a transaction. *See id.* (citing Appx105-06 (6:18-26, 6:48-55, 6:66-7:4)). The Board then dispensed with Proxense's remaining substantive positions. Appx15-41.

The Board also disagreed with Proxense's portrayal of the '730 EPR. While Proxense had disputed certain aspects of Ludtke before the examiner, the Board did not read the examiner's comments as accepting Proxense's positions. Appx41-43. Rather, the examiner deemed Proxense's arguments "moot" in view of her updated rejections. *Id.* (citing Appx2611-12). Although the examiner withdrew her rejections over Ludtke after Proxense's '730 EPR amendment, the Board found

Proxense's argument both late and unpersuasive. Appx43-44 (citing Appx3164). The examiner offered no reason for the withdrawal, the Board reasoned, and the Board thus gave the withdrawal no weight. Appx44. The Board did not reach Apple's estoppel argument, having disposed of the other issues. *Id.*

Proxense thereafter petitioned for Director Review, arguing that the Board's Apple IPR decision reached inconsistent results with the '730 EPR. Appx3193; Appx3199-202. In the interim, Acting Director Stewart issued a memorandum delegating her authority to APJ Ankenbrand to make Director Review decisions in cases of conflicts. Appx9445. In August 2025, APJ Ankenbrand denied Proxense's request for Director Review in the Apple IPR. Appx48-49.

### F. The Examiner's Further Rejections in the '730 EPR

After the Board's Apple IPR decision, Proxense canceled the pending claims in the '730 EPR (including the "by an application" amendment) and submitted them as "new" claims 18-34. Appx9436-43. The claims were otherwise identical.

Whatever purported inconsistency Proxense saw in the '730 EPR soon vanished. In a July 2025 office action, the examiner rejected claims 18-34 containing Proxense's amended language. Appx3244-95. Not only did the examiner maintain her rejections over Burger (*see* Appx3249-64; Appx3273-76; Appx3290-93), she reinstated her rejections over Ludtke (*see* Appx3265-72; Appx3276-89; Appx3293-95). The prior art rejections thus proceeded as follows:

| Claims | Rejection | Reference(s) |
|---|---|---|
| 18-19, 21-26, 29, 31-34 | § 102 | Burger |
| 28 | § 103 | Burger |
| 20, 27, 30 | § 103 | Burger, Robinson |
| 32-34 | § 102 | Ludtke |
| 18-19, 21-26, 28-29, 31 | § 103 | Ludtke, Okereke |
| 20, 27, 30 | § 103 | Ludtke, Okereke, Robinson |

*See* Appx3248-89. The examiner also found the claims unpatentable based on double patenting (Appx3244-48) and estoppel (Appx3290).

In making these rejections, the examiner made two pertinent findings. First, she expressly rejected Proxense's construction proposed in the Apple and Microsoft IPRs. *See* Appx3292-93. In her view, "[t]he claims do not ***require*** the parties to be a user and an application." Appx3292 (emphasis in original). While "[t]he parties could be the user and the application," she explained, the claims were not so limited. *Id.* The parties also "could be, for example, the user and vendors, advertisers," or other nonapplication entities. *Id.* Second, the examiner determined claims 18-34 were patentably indistinct from claims 1-17 for which Proxense sought adverse judgment. Appx3290. This posture estopped Proxense from pressing the patentability of claims 18-34 of the '730 patent. *Id.*

### G. Proxense's Attempts To Inject the '730 EPR into the Microsoft IPR

In the Microsoft IPR, Proxense did not raise any arguments concerning the '730 EPR in its Patent Owner Response (Appx8435-58) or Sur-Reply (Appx8644-58). After briefing closed, the Board issued an order setting oral argument.

Appx8726-33. The order reiterated the "strict prohibition against the presentation of new evidence or arguments at [the] hearing," and stated that "[t]he parties may request a pre-hearing conference in advance of the hearing . . . to preview . . . the issues to be discussed at the hearing, and to seek the Board's guidance as to particular issues that the panel would like addressed." Appx8727-28.

Proxense requested supplemental briefing concerning the '730 EPR, which the Board denied. *See* Appx9058. Proxense did not seek a pre-hearing conference or otherwise request permission to raise new arguments at the hearing. Instead, it unilaterally served hearing demonstratives exclusively raising new arguments concerning the '730 EPR. Appx8873-902. Even after Microsoft objected to these new arguments, Appx8833-34, Proxense did not seek leave from the Board to raise new arguments not preserved in its Patent Owner Response.

At the oral hearing, Proxense tried to argue Microsoft's obviousness grounds over Burger were somehow inconsistent with the '730 EPR examiner's anticipation rejection. Appx9039-41. Judge McKone noted that the issue had not been briefed and inquired as to the relevance of the '730 EPR office action. Appx9039-40 (25:22-26:12). Proxense conceded that the examiner did not "make any inconsistent claim construction with the Board" and could not identify any findings by the examiner "that are inconsistent as far as Burger's disclosure." Appx9040 (26:9-23). Instead, Proxense identified the examiner's decision not to

issue a redundant obviousness rejection as the sole basis for its purported inconsistency. Appx9040-41 (26:17-27:9). Judge McKone did not agree:

> The examiner didn't foreclose a 103 rejection. This is a non-final action. In any case, this is not relevant to what we're discussing here. I'll permit you to argue the arguments that you made in your briefs in this case. But as far as the reexam is concerned, if that's all you have to argue, then no we're not going to allow the argument of the reexam in this hearing. So if you have arguments related to – arguments that you presented in your brief, this is your opportunity to present them.

Appx9041 (27:10-16). Proxense concluded: "Well, then, Your Honor, if you're not going to allow us (TECHNICAL DIFFICULTIES - INDISCERNIBLE) concerns, we'll rest our case in Court with the rest of our time." *Id.* (27:17-19).

### H. Proxense's Further Amendments in the '730 EPR

Between the oral hearing in the Microsoft IPR and the Board's decision there, Proxense further amended the '730 patent claims to overcome the examiner's pending rejections. As it did before, Proxense canceled claims 18-34 and added them as new claims 35-51. Appx9064; Appx8987-95. The new claims expressly recited the construction that both the examiner and the Board had rejected—that "the user and the application" are the "principal parties to the transaction." *See* Appx9064 (claim 35); Appx2497-2500 (presenting this construction in the Apple IPR); Appx8438-39 (same for the Microsoft IPR). The claims had not previously recited this limitation:

| Claim 18 (Canceled) | Claim 35 ("New," i.e., Amended) |
|---|---|
| "responsive to authentication of the one or more codes and the other data values by the agent, receiving an access message by an application from the agent allowing the user access to the application" | "responsive to authentication of the one or more codes and the other data values by the agent, receiving an access message by an application from the agent allowing the user access to the application ***and complete a transaction of the user accessing the application, wherein principal parties to the transaction are the user and the application***" |

*See* Appx9437 (claim 18); Appx9064 (claim 35, amended language emphasized[5]). The examiner found these amended claims patentable. Appx9072-73; Appx9078-79. In doing so, she emphasized the new claim amendment requiring the "principal parties to the transaction be the user and the application." Appx9072 & n.4. Prior to this amendment, she reiterated, the claims did not require the application to be a principal party to the transaction. *Id.*

### I. The Board's Microsoft IPR Decision

In its final written decision in the Microsoft IPR, the Board ruled that Microsoft's Burger-based grounds render obvious all claims of the '954 patent (claims 1-29). Appx51-52; Appx58; Appx61-88; Appx91-92 (finding invalidity and listing grounds); Appx5031-32. The technical details of these findings are not relevant to this appeal because Proxense does not challenge them, instead raising only procedural and claim construction arguments. *See generally* BB.

---

[5] All emphasis is added unless noted otherwise.

Before the Board, Proxense had raised the same claim construction dispute as in the Apple IPR. *See* Appx8438-43. The Board addressed this claim construction on the merits. Appx58-61. Noting that, in the Apple IPR, it had already "rejected the modifications to our construction that [Proxense] advance[d] in the Patent Owner Response[,]" the Board then reiterated its rulings. Appx60. Specifically, the Board held "the plain language of claim 1 does not limit the parties to a transaction between the user and an application, or require that one of the parties to a transaction be the application ultimately accessed." Appx60 (quoting Appx11). Further, the Board concluded, there is "nothing in the intrinsic evidence that departed from the ordinary meaning, either through lexicography or disavowal of the full claim scope." *Id.* (citations omitted). The Board thus adopted its construction from the Apple IPR "[f]or the same reasons, and based on the same evidence." Appx61. The Board then made its now-unchallenged findings that Microsoft's invalidity grounds based on Burger render the challenged claims obvious under its construction. *See* Appx61-88.

Although not required, the Board also considered the '730 EPR and found "no findings or conclusions inconsistent with our findings and conclusions" in its decision. Appx89. The Board noted Proxense's admissions that the examiner "adopted specifically the rationale from the institution decision of this proceeding," did not "make any inconsistent claim construction with the Board," and did not

introduce "any inconsistencies" with the Board's findings as to "what Burger discloses." Appx90 (citations omitted). The Board also rejected Proxense's argument made "for the first time at the oral argument" that the examiner's reliance on anticipation rather than obviousness gave rise to an inconsistency. Appx91. The Board saw "no requirement that the Examiner, when concluding that Burger discloses each limitation of [then-pending] claims 18-34" of the '730 patent, "was required to make back-up obviousness rejections." *Id.* Finally, the Board found that Proxense's arguments concerning claims 18-34 of the '730 patent had "little relevance" because Proxense had since canceled those claims and "added new claims 35-51." *Id.* Proxense elected not to seek Director Review of the final written decision in the Microsoft IPR.

## IV. SUMMARY OF THE ARGUMENT

None of Proxense's arguments warrants vacatur or reversal. The Court should affirm.

As for claim construction, the Board correctly rejected Proxense's argument limiting a "trusted authority" to transactions where "[t]he principal parties . . . are the user and [an] application." BB42. Neither the '954 claims nor the specification justifies this requirement. The claims never identify the parties to the transaction, let alone require one of those parties to be an application. The reexamined claims of the parent '730 patent underscore this distinction, as those

claims expressly require the application to be a party to the transaction. Proxense thus knew how to capture the limitation it seeks through claim construction, but it chose not to do so in the ’954 claims. Further, Proxense’s construction would exclude several embodiments in the specification where an application is not a party to a transaction. The Board thus correctly rejected Proxense’s construction reading in unclaimed limitations that exclude disclosed embodiments.

Regarding the alleged APA violations, the Court first has no need or jurisdiction to set aside an already-lifted stay the Board never entered in the appealed cases. Second, in the Microsoft IPR, the Board did not err by rejecting Proxense’s untimely arguments involving canceled claims in the ’730 EPR. Nor was there any inconsistency between the Microsoft IPR and ’730 EPR, as both cases held similar claims unpatentable over the same art. Third, in the Apple IPR, the Board did not reach “inconsistent results” with the ’730 EPR examiner. BB30-31. As with the Microsoft IPR, both factfinders rejected similar claims over the same art. Proxense ignores these rejections.

Finally, though the Court need not reach Proxense’s constitutional dispute, the Supreme Court and this Court have already rejected Proxense’s argument. The Court can do the same here.

## V. ARGUMENT

### A. Standard of Review

The Court reviews Board claim constructions based solely on intrinsic evidence de novo. *Shockwave Med., Inc. v. Cardiovascular Sys., Inc.*, 142 F.4th 1371, 1377 (Fed. Cir. 2025) (citing *Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1339 (Fed. Cir. 2020)). Courts give terms their customary meaning as understood by a skilled artisan given the claims, specification, and prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-17 (Fed. Cir. 2005) (en banc).

Under the APA, the Court sets aside Board decisions that are arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A). The Court reviews the Board's compliance with its own procedures for an abuse of discretion. *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016) (citing *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1121 (Fed. Cir. 2004)). The Board abuses its discretion when its decisions rest on clearly erroneous views of the law, facts, or weighing of factors. *See id.*

The President is responsible for the actions of the Executive Branch. *United States v. Arthrex, Inc.*, 594 U.S. 1, 11 (2021) ("*Arthrex I*") (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 496-97 (2010)). The President may appoint "principal officers" to carry out his or her power through a clear chain of

command. *Id.* at 11-12. The Constitution requires the Senate to confirm these principal officers. U.S. CONST. art. II, § 2, cl. 2. Nevertheless, nonprincipal ("inferior") officers may perform duties of a principal officer on a "temporary, acting basis" under "special and temporary conditions." *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1333-34 (Fed. Cir. 2022) ("*Arthrex II*") (quoting *United States v. Eaton*, 169 U.S. 331, 343 (1898)).

### B. The Board Correctly Rejected Proxense's Construction That Contradicts the Intrinsic Record

The independent claims of the '954 patent recite a "third party that operates a trusted authority" or variant of the phrase. *See* Appx107 (10:20-21); Appx108 (11:8-9, 12:22-23); *see also* Appx108 (11:33-34) ("trusted authority operated by a third party"). The Board construed this term to mean "a trusted authority that is an entity separate from the parties to a transaction." Appx15; Appx61. Although Proxense nominally agreed with this construction in its Patent Owner Response (Appx2367), it simultaneously urged the Board to require "a user and an application" to be "parties" to the transaction. *See* Appx2367-68; Appx8438-43. Proxense repeated this construction in subsequent briefing and on appeal. BB42 ("The principal parties to this transaction are the user and the application . . . ."); Appx2497-500; Appx8647-57.

The Board correctly rejected Proxense's further narrowing as inconsistent with the intrinsic record for two reasons. Appx10-15; Appx59-61. First, "[t]he

language of claim 1 does not expressly identify the parties to a transaction," let alone "require that one of the parties . . . be the application ultimately accessed." Appx11. Second, the specification does not "limit[] the claims to transactions" where "the application being accessed is, itself, a party to the transaction." Appx14. Indeed, it discloses "several examples in which the application being accessed is not a party to the transaction." *Id.* The Board's construction and analysis of the intrinsic record is correct, and the Court should affirm.

### 1. The Claims Do Not Require Transactions Where Applications Are Parties

Proxense's construction finds no support in the '954 claims. As recited, the "application" merely receives an "access message from the trusted authority." *E.g.*, Appx107 (10:23-27). This message "allow[s] the user access to the application." *Id.* As the Board held, nothing in this phrasing suggests—let alone requires—the application to be a "party" to a "transaction." Appx11 (explaining how the claims "do[] not expressly identify the parties to a transaction"); Appx61 ("[A] transaction is not limited to those in which the principal parties are the user being allowed access and the application being accessed."). Indeed, the claims do not recite a "transaction" or "principal parties" whatsoever. Appx107-08.

The dependent claims support this understanding. Claims 7-9, for example, recite applications including a "casino machine," "ATM machine," "file," "medical information," or "financial account." *See* Appx107 (10:44-51) *see also*

Appx105 (6:18-26). None of these items must be a "party" to an underlying transaction. Instead, as the Board found, they are assets of a party or mechanisms through which parties interact. Appx13-14; *see* Appx60-61.

Proxense does not show error in this analysis. Proxense argues that the Board "divorce[d] the term 'transaction' from the claims' own language" and ignored the claims' definitions of "principal parties" and "transaction." BB41-42. But the claims never use the words "principal parties" or "transaction." *See* Appx107-08 (10:5-12:51); *see also* BB16 (admitting "parties" and "transaction" do not appear in the claims). Instead, the concept of "parties to a transaction" appears in the Board's construction, Appx15 ("a trusted authority that is an entity separate from the parties to a transaction"), which Proxense reinterprets to import extraneous limitations from the '730 EPR. Importing such limitations is improper. *See Housey Pharms., Inc. v. Astrazeneca UK Ltd.*, 366 F.3d 1348, 1355 (Fed. Cir. 2004) ("The danger of improperly importing a limitation is even greater when the purported limitation is based upon a term not appearing in the claim." (quoting *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1325 (Fed. Cir. 2003))); *see also Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1299-1301 (Fed. Cir. 2014) (rejecting a construction for "add[ing] words to the actual claim language" with no record support). As discussed, nothing in the

’954 claims limits their scope to certain “transactions,” let alone those where an application is a “principal party.”

The reexamined claims of the ’730 patent (the ’954 patent’s parent) confirm this construction. During the ’730 EPR, the examiner rejected similar claims under both Ludtke and Burger grounds.[6] To overcome the art, Proxense had to amend the claims to expressly recite “wherein principal parties to the transaction are the user and the application.” The ’954 patent claims do not include this recitation:

| ’954 Patent, Claim 1 | Reexamined ’730 Patent, Claim 18 |
| --- | --- |
| “receiving, at an application, an access message from the trusted authority indicating that the trusted authority successfully authenticated the one or more codes and other data values sent to the third party and allowing the user access to the application” | “responsive to authentication of the one or more codes and the other data values by the agent, receiving an access message by an application from the agent allowing the user access to the application and complete a transaction of the user accessing the application, ***wherein principal parties to the transaction are the user and the application***” |

*See* Appx107 (10:23-27); Appx9078 (1:46-52).

This difference refutes Proxense’s construction. The parent ’730 claim language requires principal parties to be “the user and the application,” but the child ’954 claims do not. When related patents use different claim terms, courts

[6] *See* Appx2772-73 (rejecting similar limitation under Ludtke); Appx3136-37 (same); Appx3149-50 (same); Appx3172-76 (rejecting a narrower limitation under Burger); Appx9072-73; § III.B, *supra*. Ludtke and Burger form the bases of the Board’s rejections of the claims in the decisions on appeal, IPR2024-00233/ IPR2024-01334 and IPR2023-00846, respectively. *See* § III.E, III.I, *supra*.

generally give them different scopes. *See, e.g.*, *In re Rambus Inc.*, 694 F.3d 42, 48 (Fed. Cir. 2012) (declining to limit "memory device" to single-chip devices when a related patent expressly claimed a "single semiconductor substrate"); *ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1382-83 (Fed. Cir. 2003) (applying different constructions to similar terms in related patents due to minor variations in language); *Heron Therapeutics, Inc. v. Azurity Pharms., Inc.*, No. 24-830, 2025 WL 3022166, at *1 (D. Del. Oct. 29, 2025) (Bryson, J.) (declining to import a requirement into claims when "similar claims in other asserted patents do contain such a limitation"). This is especially true when applicants amend claims during prosecution. *See, e.g.*, *Ajinomoto Co. v. Int'l Trade Comm'n*, 932 F.3d 1342, 1351-52 (Fed. Cir. 2019) ("[W]hen a word is changed during prosecution, the change tends to suggest that the new word differs in meaning in some way from the original word." (citing *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012))).

The way in which these claim differences arose in the '730 EPR confirms that they are meaningful. The '730 patent claims did not initially recite that the "principal parties to the transaction are the user and the application." *See* Appx9093-9094. Without this express limitation, the examiner rejected them and explained that "[t]he claims do not ***require*** the parties to be a user and an application." Appx3292 (emphasis in original). In response, Proxense amended

the ’730 patent claims to require the user and the application to be the principal parties. Appx9064. Only then did the examiner agree the claims were patentable. Appx9072-73. Had the original ’730 claims already been limited to transactions where “the user and the application” are “principal parties,” Proxense’s amendment would have been superfluous. It is “highly disfavored” to construe claims this way. *Wasica Fin. GmbH v. Cont’l Auto. Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017) (citing *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950-51 (Fed. Cir. 2006)).

Accordingly, the Board correctly determined that nothing in the ’954 claim language requires the application to be an unnamed principal party to an undescribed transaction. Appx11-12; Appx60-61. Indeed, the reexamined ’730 claims demonstrate that Proxense knew precisely how to claim this limitation but chose not to do so in the ’954 patent. The Court—like the Board—should reject Proxense’s request to inject these unrecited limitations into the claims.

### 2. The Specification Does Not Require Transactions Where Applications Are Parties

The ’954 specification further supports the Board’s construction. The patent is replete with examples where an “application” is not a party to a transaction. *See* Appx13-14 (Board discussing these examples); Appx60. Proxense’s construction improperly reads out these examples from the claims, confirming that it is wrong. *See, e.g.*, *Wasica*, 853 F.3d at 1280 (“We normally do not interpret claim terms in a

way that excludes disclosed examples in the specification." (quoting *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007))).

In one example, an "ATM machine" application acts as an intermediary between a user and a bank. Appx105 (6:18-26). Here, the parties are the user and the bank. Appx13; *see* Appx60-61. The ATM application merely reflects "the mechanism through which" the user accesses the bank's accounts. Appx13 (citing Appx2466 ¶13); *see* Appx60-61. In other examples, the application includes a "savings account," "medical record," "casino machine," and "web site." *See* Appx105-06 (6:18-26, 6:64-7:4). For these transactions, the parties are the user and the host of the resource (e.g., a bank, doctor, casino, or site host). The applications merely reflect the assets being accessed. Proxense's construction requiring the application to be a "principal party" improperly excludes these embodiments from the claims. *See Wasica*, 853 F.3d at 1280-81.

The Board agreed. In its decisions, the Board explained how these examples confirm the "application being accessed is not, itself, a party to the transaction." Appx13-14. Rather, the application is merely "an asset of one of the parties or the mechanism by which the parties transact." *Id.*; *see* Appx60-61. In doing so, it credited the explanations from Apple's expert describing how a skilled artisan would have understood these passages. *See* Appx13 (citing Appx2466-67 (¶¶13-

14)); Appx60-61 (citing Appx8647); Appx5743-44 (¶43). Proxense did not submit competing expert testimony on claim construction.

Proxense faults the Board for allegedly rewriting the specification to include unnamed parties and transactions to its examples. *See* BB42-46. But the '954 patent uses the word "transaction[]" just once in the background section to describe a generic bank exchange. *See* Appx103 (1:29-31). Notably, this example further supports the Board's construction. There, an ATM machine acts as an intermediary between a "person" and a "bank." *Id.* The two parties to this transaction are thus the person and the bank—not the ATM. *Id.* The Board agreed. Appx13 (discussing the ATM in Appx105 (6:18-26)); Appx60-61.

In any event, the Board did not "rewrite" these examples. BB42-45. When the application is an "ATM" or "financial account," the parties are the user and the bank. Appx13; *see* Appx60-61. When the application is a "casino machine," the parties are the user and the casino. Appx13-14 ("Here, the parties are the user and a casino, and the slot machine is the mechanism for the transaction, not itself a party."); *see* Appx60-61. In either case, the application is not a party—it is merely a means of exchange between them. Appx13-14; *see* Appx60-61.

Contrary to Proxense's assertion, the Board's construction does not make a garage door opener embodiment "absurd" because the opener is a party in that example. BB45 (citing Appx105 (6:51-52)). The Board's construction does not

exclude this embodiment—it simply does not limit the claims to that embodiment. It is improper to import limitations from an example into the claims "absent a clear indication . . . the patentee intended the claims to be so limited." *E.g.*, *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1341 (Fed. Cir. 2014) (quoting *Liebel-Flarsheim v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004)). Here, nothing in the '954 patent shows an intent to limit the claims to this type of example.

First, the claims cover far more than garage door openers. Claim 1 recites no garage door opener at all, and claim 7 lists it as just one possibility among others. *See* Appx107 (10:5-27, 10:44-47)).

Second, as discussed, the specification describes several embodiments where an application is not a party. *See supra*. Indeed, the same paragraph Proxense cites discusses a "public grocery store" and "users" as parties. Appx105 (6:48-51). Proxense claims the grocery store is merely the "location" of an ATM machine (BB44-45), but this paragraph never mentions an ATM (Appx105 (6:48-55)). The Board properly rejected this argument too. Appx14 (concluding this example describes "a transaction between a customer and a grocery store"); *see* Appx60-61.

Third, Proxense does not contend lexicography or disclaimer defines "applications" as required parties to transactions. BB41-46. Proxense thus fails to justify limiting the '954 claims to a garage door embodiment to the exclusion of others. This Court "normally do[es] not interpret claim terms in a way that

excludes disclosed examples in the specification." *Wasica*, 853 F.3d at 1280 (quoting *Verizon*, 503 F.3d at 1305). It should not do so here.

Proxense presents a similar argument for Figure 7 (BB42-44), but even if that example includes "one embodiment" where an application is a party (Appx106 (8:5-7)),[7] it does not diminish the other examples where this is not the case. The Board correctly concluded the same and rejected Proxense's construction. Appx12-15; Appx60-61. The Court should affirm.

* * *

Proxense does not dispute the unpatentability of the challenged claims under the Board's construction. *See* BB46-47. Because this construction is correct, the Board's judgment should be affirmed. Alternatively, if the Court disagrees with Appellees' construction, it should still remand the Apple IPR for the Board to address the parties' unresolved estoppel dispute. Appx44; *see* §§ III.D-E, *supra*.

### C. The Board Properly Complied with the APA

The Court should reject Proxense's arguments alleging various APA violations. BB25-37. The first argument is moot, and the Court lacks jurisdiction

[7] Proxense contends the Board agreed with this understanding of Figure 7 in the institution decision. BB16-18 (citing Appx2274), BB42-44. Even if that were true, it is immaterial. The same paragraph of the Board's analysis also discusses other examples where the application is not a party. *See* Appx2274 (citing Appx105 (6:37-51)); Appx8398-99.

to consider it. Proxense's remaining two arguments mischaracterize the '730 EPR and ignore its ultimate result.

### 1. Proxense's Challenge to the EPR Stay Is Moot, and the Court Lacks Jurisdiction To Consider It

The Court should reject Proxense's request to "set aside" the stay in the '730 EPR. BB30. The Board did not enter the stay in the appealed cases, and the stay lifted over a year ago. Appx3219-21. The issue is thus moot, and the Court lacks jurisdiction to hear it.

#### a. The Issue Is Moot Because the Stay Was Lifted

This issue is moot because the Board lifted the stay over a year ago. *Id.* There is thus no relief the Court can give.

A dispute is moot when there is no longer a live issue for the Court to resolve. *See, e.g.*, *eSimplicity, Inc. v. United States*, 122 F.4th 1373, 1376 (Fed. Cir. 2024) ("This case is moot because there is no longer a live issue."); *Regents of the Univ. of Cal. v. Broad Inst., Inc.*, 136 F.4th 1367, 1385 (Fed. Cir. 2025) (describing mootness as "when 'it is impossible for a court to grant any effectual relief whatever'" (quoting *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 376-77 (2019))).

Here, the Board lifted the stay in April 2025 after Proxense's request for adverse judgment. *See* Appx3213 (stayed March 27, 2025), Appx3219-21 (lifted April 28, 2025); BB11 ("The stay was subsequently lifted . . . ."). Proxense asks

the Court to "set aside" the stay (BB30), but there is no stay to set aside. The Board already granted the relief Proxense seeks from the Court.

#### b. The Court Lacks Jurisdiction To Rule on the Stay Entered in Other Cases

The Court also lacks jurisdiction to adjudicate the stay for two independent reasons. First, it was not entered in the cases on appeal. The Board stayed the '730 EPR in only IPR2024-00232 and IPR2024-01333 involving the '730 patent. *See* Appx3213; Appx3217. Those cases were not appealed and are not before the Court. *See* Appx3220; *see also Apple Inc. v. Proxense, LLC*, IPR2024-00232, Paper 29, at *1 (P.T.A.B. Apr. 15, 2025). Indeed, ***Proxense*** terminated those cases by requesting adverse judgment. Appx3220-21; *see also* Appx9447-48. As a result, Proxense could not appeal any decision entered in those cases. *See Bly v. Shulkin*, 883 F.3d 1374, 1376 (Fed. Cir. 2018) ("In general, parties lack standing to appeal judgments entered on consent . . . .").

In any event, the Board did not enter the contested stay in the '954 patent cases on appeal here. *See, e.g.*, Appeal No. 25-2168, Dkt. 9 at 4-5, 7 (no stay in IPR2024-00233 or IPR2024-01334); Appeal No. 26-1283, Dkt. 9 at 4-5 (same for IPR2024-00846). The Court therefore lacks jurisdiction to hear Proxense's dispute over the '730 EPR stay. *Pers. Audio, LLC v. CBS Corp.*, 946 F.3d 1348, 1353 (Fed. Cir. 2020) (court lacks jurisdiction to hear collateral attacks on separate

proceedings); 28 U.S.C. § 1295(a)(4)(A) (conferring jurisdiction over "an appeal from a decision of . . . the [Board] with respect to a[n] . . . inter partes review").

Second, even if Proxense could somehow appeal an interlocutory order from a different IPR where it requested and received adverse judgment, Proxense's notices of appeal do not identify the stay order. *See* Appx3303-04; Appx5009-10; Appx9055-56. This omission is fatal because Federal Rule of Appellate Procedure 3 requires notices of appeal to "designate the judgment—or the appealable order—from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). Rule 3 is jurisdictional. *E.g.*, *Smith v. Barry*, 502 U.S. 244, 248 (1992) ("Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review. . . . [N]oncompliance is fatal to an appeal."). Proxense did not comply with Rule 3 by listing the Board's stay order or adverse judgment as being appealed. *See* Appx3303-04; Appx5009-10; Appx9055-56. Although orders that "merge into the designated judgment" need not be separately listed (Fed. R. App. P. 3(c)(4)), orders involving different patents must be. *See, e.g.*, *Durango Assocs., Inc. v. Reflange, Inc.*, 912 F.2d 1423, 1425 (Fed. Cir. 1990) (dismissing appeal on one patent when a notice of appeal mentioned only another).

Either way, the Court has no jurisdiction to rule on the '730 EPR stay.

#### c. The Board Did Not Abuse Its Discretion by Issuing a Short Stay Accounting for Parallel Proceedings

Proxense's stay argument also fails on substance. The Board has broad statutory discretion to manage the docket of post-grant proceedings, including "providing for [a] stay." 35 U.S.C. § 325(d); *see also In re Knauf Insulation, Inc.*, No. 22-166, 2022 WL 17098755, at *2 (Fed. Cir. Nov. 22, 2022) (explaining how the Office may make a "case-specific exercise of discretion" to manage proceedings). Here, the Board did not abuse its discretion by ordering a short, one-month stay of the '730 EPR when multiple IPRs challenged the same patent using the same art. *See* § III, *supra*. The Board immediately lifted the stay following Proxense's request for adverse judgment. Appx3219-21.

Proxense's suggestion that the stay caused inconsistent results between the '730 EPR and '954 IPR (*see* BB27-28), merely rehashes the same APA dispute Proxense lodges for the Apple IPR (BB30-34). It is wrong for the same reasons. *See* § V.C.3, *infra*. As discussed below, there was no inconsistency.

### 2. In the Microsoft IPR, the Board Did Not Abuse Its Discretion or Violate the APA by Declining To Hear Proxense's Untimely Arguments About Canceled Claims in a Different Proceeding

Proxense similarly fails to show any procedural or substantive error in the Board's treatment of the '730 EPR in the Microsoft IPR. *See* BB34-37 (what Proxense calls the "Second Arbitrary and Capricious Inconsistent Determination").

Proxense, not the Board or the CRU, opposed a short stay and thus required both proceedings to move forward in parallel, making any resulting prejudice entirely self-imposed. Appx8714-16. Despite the inherent inefficiency to this approach, the Board and CRU examiner both discharged their duties appropriately and reached entirely consistent conclusions: that neither the original '730 patent claims nor the similar '954 patent claims were patentable over the Burger grounds. Proxense thus provides no basis for vacatur of the Microsoft IPR decision.

At the outset, Proxense's arguments are moot because they relate to only a rejection of claims that Proxense itself canceled. Appx91. As the Board noted, by the time its decision issued, Proxense had already canceled the claims at issue in the rejection Proxense cited (claims 18-34). *Id.*; Appx9064. Indeed, Proxense does not appear to challenge the Board's finding that the cancellation of these claims means that the reasoning underpinning their nonfinal rejection has "little relevance" to the '954 patent claims. Appx91; *see* BB34-37. That alone provides ample basis for rejecting Proxense's APA challenges to the Microsoft IPR.

In any event, substantial evidence supports the Board's finding that its unpatentability determinations for the '954 patent were consistent with the nonfinal rejection of claims 18-34 of the '730 patent. Appx89-91. Proxense itself conceded that the examiner adopted the Board's reasoning from its institution decision, and that the examiner's claim construction and interpretation of Burger's teachings

were fully consistent with the Board's. *Id.*; Appx9039-41. These concessions directly contradict Proxense's suggestion that the Board "attempted to silence the CRU by dismissing ***its determinations*** regarding" Burger. BB34.

Unable to identify any inconsistent determination, Proxense's sole theory is that the examiner's finding of ***anticipation*** by Burger somehow amounted to an implicit rejection of ***obviousness***. BB34-37. But Proxense cites no authority for the proposition that anticipation somehow repudiates a holding of obviousness. *Id.* Indeed, the law is precisely the opposite: anticipation is the epitome of obviousness. *See, e.g.*, *Incept LLC v. Palette Life Scis., Inc.*, 77 F.4th 1366, 1374 n.4 (Fed. Cir. 2023) (citing *In re Paulsen*, 30 F.3d 1475, 1481 (Fed. Cir. 1994)); *Realtime Data, LLC v. Iancu*, 912 F.3d 1368, 1373 (Fed. Cir. 2019) (citing *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)). The MPEP's compact prosecution provision, *see* Manual of Patent Examining Procedure § 2173.06(I), does not and cannot displace this settled law. Appx90-91; *see also, e.g.*, *In re McDonald*, 43 F.4th 1340, 1348 (Fed. Cir. 2022) (noting that the MPEP is not binding on this Court).

The examiner's finding that Burger anticipates then-pending claims 18-34 of the '730 patent is thus entirely consistent with the Board's determination that the '954 patent claims would have been obvious based on Microsoft's Burger-based grounds. Further, Proxense identifies no error in the Board's independent

determination that the examiner's findings are immaterial because they were nonfinal. Appx89; Appx8740-803 (office action rejecting claims 18-34); *In re Ruschig*, 379 F.2d 990, 993 (C.C.P.A. 1967) ("There is nothing unusual, certainly, about an examiner changing his viewpoint . . . ." (quoting *In re Becker*, 101 F.2d 557, 560 (C.C.P.A. 1939))).

Nor did the Board err by enforcing the Trial Practice Guide and its own oral argument order by precluding new arguments at the oral hearing. This Court "review[s] the Board's application of its own procedural rules for abuse of discretion." *Chamberlain Grp., Inc. v. One World Techs., Inc.*, 944 F.3d 919, 924 (Fed. Cir. 2019). Here, there is none. First, the untimeliness of Proxense's argument alone is enough for affirmance. *See, e.g.*, *Illumina*, 821 F.3d at 1369-70 (Board did not abuse its discretion in excluding untimely argument and evidence); *Schwendimann v. Neenah, Inc.*, 82 F.4th 1371, 1383 (Fed. Cir. 2023) ("[T]he law is clear that arguments raised to the Board at an oral hearing are not preserved.").

Second, the Board gave Proxense an opportunity to explain the relevance of the '730 EPR office action and precluded the new arguments only after Proxense failed to do so. Appx9039-41. Third, the Board heard the only argument Proxense presses on appeal—that the examiner's reliance on anticipation rather than obviousness somehow amounts to an inconsistency. *Id.* Proxense fails to articulate any other arguments it was unable to make. BB34-37. Thus, Proxense

does not meet its burden to show prejudice from the Board's decision to preclude further argument concerning the '730 EPR. *See Bot M8 LLC v. Sony Interactive Ent. LLC*, 66 F.4th 1380, 1385 (Fed. Cir. 2023) ("[T]he party challenging the Board's decision must demonstrate the harmfulness of the alleged error.").

Finally, *In re Magnum Oil Tools International, Ltd.* does not bar the Board from responding to a party's own argument raised for the first time at the oral hearing. 829 F.3d 1364, 1381 (Fed. Cir. 2016). In *Magnum Oil*, this Court stated the uncontroversial rule that "the Board must base its decision on arguments that were advanced by a party, and to which the opposing party was given a chance to respond." *Id.* Here, ***Proxense*** is the party that raised the argument about the '730 EPR, whereas the opposing party—Microsoft—did not have a chance to respond in writing. *Id.*; BB35; Appx9037-41. Proxense cites nothing suggesting that the Board commits error simply by explaining why it found Proxense's argument unconvincing. BB34-37. It would turn the APA on its head to suggest that the Board's decision to "nevertheless" address these untimely arguments somehow deprived Proxense of its procedural rights. Appx88-91. Accordingly, the Court should affirm the Board's rejection of Proxense's APA argument.

* * *

If the Court finds no APA error in the Microsoft IPR, it need not reach Proxense's APA argument for the Apple IPR (BB30-34). In the Microsoft IPR, the

Board held every claim of the ’954 patent unpatentable (Appx92), and thus the Court need not address the Apple IPR involving fewer claims (Appx45). Nevertheless, to fully brief the issues for the Court, Appellees address Proxense’s APA argument for the Apple IPR in the following section.

### 3. In the Apple IPR, the Patent Office Correctly Arrived at Consistent Conclusions

If the Court reaches Proxense’s APA argument in the Apple IPR, it should reject it. Both the Board and the examiner rejected similar claims between the ’730 and ’954 patents over Ludtke. In arguing the Board reached “inconsistent results” with the ’730 EPR examiner (BB30-34), Proxense ignores this rejection. There is thus no inconsistency, and the Court should affirm.

#### a. The Patent Office’s Findings on Ludtke Are Consistent

For the Apple IPR, Proxense’s entire APA argument incorrectly assumes the ’730 EPR examiner found then-pending claims of the ’730 patent allowable over Ludtke. BB32-33 (citing Appx3156); *see* BB10 (citing Appx2806; Appx3156); BB27. According to Proxense, by entering an amendment reciting “receiving an access message ***by an application***,” the examiner indicated her agreement that these claims were patentable over Ludtke. BB31-33; Appx9430; Appx9443.

Proxense ignores the rest of the prosecution. In an ensuing office action, the examiner ***rejected*** independent claims 18, 25, 29, and 32 containing this limitation

over Ludtke. Appx3265-71; Appx3276-87. To the examiner, Ludtke rendered these claims obvious (Appx3276) and anticipated (Appx3265).[8] The rejected claim language is identical to the language Proxense contends is allowable:

| **Proxense's Purported "Allowable" Limitation BB32-33** | **'730 Claim 18 (Obvious) Appx3282-83** | **'730 Claim 32 (Anticipated) Appx3270-71** |
|---|---|---|
| "receiving an access message by an application from the agent allowing the user to access the application, wherein the application is selected from a group consisting of a casino machine, a keyless lock, a garage door opener, an ATM machine, a hard drive, computer software, a web site and a file" | "receiving an access message by an application from the agent allowing the user access to the application, wherein the application is selected from a group consisting of a casino machine, a keyless lock, a garage door opener, an ATM machine, a hard drive, computer software, a web site and a file" | "receiving an access message by an application from the agent allowing the user to access the application, wherein the application is selected from a group consisting of a casino machine, a keyless lock, a garage door opener, an ATM machine, a hard drive, computer software, a web site and a file" |

*See* BB32-33; Appx3265-71; Appx3282-83.

There is thus no inconsistency. Both the Board and the examiner rejected identical language in the '954 and '730 patents over Ludtke. The Board's findings here mirror the examiner's for then-rejected claims 18 and 32 of the '730 patent:

---

[8] The examiner's rejection of claim 18 also cites Okereke (Appx3276) but only in the alternative if Proxense disputed Ludtke for a different element (Appx3280-81). The examiner did not concede Ludtke fails to teach that element, and she did not rely on Okereke for teaching "by an application." Appx3282-83.

| **'954 Patent, Claim 1 (Obvious) Appx107 (10:23-27)** | **'730 Patent, Claim 18 (Obvious) Appx3282-83** |
|---|---|
| "receiving, at an application, an access message from the trusted authority indicating that the trusted authority successfully authenticated the one or more codes and other data values sent to the third party and allowing the user access to the application" | "responsive to authentication of the one or more codes and the other data values by the [third-party trusted authority], receiving an access message by an application from the [third-party trusted authority] allowing the user access to the application" |

*See* Appx88-90 (Board noting this correspondence); *see also* Appx3270-71. Therefore, contrary to Proxense's assertion, the Patent Office never allowed this limitation. *See also* Appx3293-95 (rejecting Proxense's arguments on Ludtke).

Proxense never mentions this rejection. Instead, Proxense emphasizes how the examiner proposed the above language during early reexam prosecution. *See* BB31-33; Appx2806; Appx3156. But as the Board found, the examiner withdrew this proposed amendment (Appx44), and she later issued rejections over Ludtke containing the proposed material (*see supra*). This course is not improper.

Examiners are entitled to change their minds about the patentability of claims during prosecution. *See, e.g.*, *Ruschig*, 379 F.2d at 993 ("There is nothing unusual, certainly, about an examiner changing his viewpoint as to the patentability of claims as the prosecution of a case progresses, and, so long as the rules of Patent Office practice are duly complied with, an applicant has no legal ground for complaint because of such change in view." (quoting *Becker*, 101 F.2d at 560)); *In re Ellis*, 86 F.2d 412, 414 (C.C.P.A. 1936); *cf. BlackLight Power, Inc. v. Rogan*,

295 F.3d 1269, 1273-74 (Fed. Cir. 2002) (explaining the Patent Office may withdraw a patent from issuance). Courts have long explained how intermediate or interlocutory actions—like the examiner's preliminary proposal here—do not reflect final agency findings. *See, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (requiring final determinations to be nontentative, noninterlocutory, and creating legal rights or obligations).

Proxense's cited authority (BB30-31, BB33-34) is not to the contrary. *In re Vivint, Inc.*, 14 F.4th 1342 (Fed. Cir. 2021), corrected discrepancies in § 325(d) decisions to combat the "abusive filing practice[]" of "incremental petitioning." *Id.* at 1353-54 (citation omitted). There, the Patent Office deemed itself powerless to deny a reexamination that "repackaged" arguments previously presented in a denied IPR petition. *Id.* at 1346-48. This Court vacated that judgment, finding the Board could have—and should have—denied the reexamination. *Id.* at 1351-54. *Vicor* involved directly contradictory Board conclusions on a motivation to combine references. *See Vicor Corp. v. SynQor, Inc.*, 869 F.3d 1309, 1322-23 (Fed. Cir. 2017). Neither case holds that an examiner's withdrawn, nonfinal remarks forever bind her and every other adjudicative body in the Patent Office.

Nor did anything like *Vivint* or *Vicor* occur here. The Office did not reach logically incompatible results like in *Vicor*, and Proxense has not alleged

impropriety in Apple's filings as in *Vivint* (*see* BB30-34). Neither case supports Proxense's argument, and this Court should affirm.

#### b. Proxense Is Estopped from Making This Argument

Finally, Proxense is estopped from making this argument. The Court can affirm for this additional reason.

Subparagraph 37 C.F.R. § 42.73(d)(3)(i) estops patentees from "taking action inconsistent with [an] adverse judgment" for claims "not patentably distinct from a finally refused or canceled claim." Here, Proxense sought and received adverse judgment for original claims 1-6 and 8-17 of the '730 patent in IPR2024-00232. *See* Appx3163-64; Appx3220-21. That case involved grounds of unpatentability based on Ludtke. *See, e.g.*, *Google LLC v. Proxense, LLC*, IPR2024-00232, Paper 10, at *8 (P.T.A.B. July 24, 2024). In the July 2025 office action, the '730 EPR examiner found claims 18-34 of the '730 patent "not . . . patentably distinct from finally refused originally issued claims 1-17." Appx3290. Thus, Rule 42.73(d)(3)(i) precludes Proxense from arguing on appeal that then-pending claim 18 (among others) were patentable over Ludtke.

Although the examiner discussed only Burger when she later explained her decision on estoppel (Appx3290), she ruled in the same office action that Ludtke discloses or teaches every limitation of independent claims 18, 25, 29, and 32 (among others). Appx3265-72; Appx3276-89. Thus, the examiner found these

claims unpatentable over Ludtke and indistinct from original claims 1, 8, 12, and 15 for which Proxense sought adverse judgment. The examiner's estoppel reasoning thus extends to Ludtke and is not limited to Burger. *See* Appx3290.

Accordingly, Proxense is estopped from arguing that canceled claims 18-34 of the '730 patent were patentable over Ludtke. The Court should affirm.

### D. Proxense's Constitutional Challenge Is Inessential to This Appeal and Foreclosed by Precedent

Proxense's Appointments challenge is both unnecessary to resolve this appeal and incorrect on the merits. BB37-40. The Court should affirm.

#### 1. The Court Need Not Reach This Issue Because Other Issues Render It Unnecessary

As a preliminary matter, the Court need not reach the Appointments issue because it is inessential to resolving this case. Both the claim construction and APA disputes independently moot Proxense's constitutional argument. The issue thus does not impact the disposition of this appeal, and the Court may disregard it.

##### a. Claim Construction Independently Obviates Proxense's Appointments Challenge

First, the parties' claim construction posture moots Proxense's constitutional challenge. On appeal, neither side asserts patentability under the other side's construction. *See* BB46-47. Here, Proxense did not raise its constitutional challenge or seek Director Review in the Microsoft IPR, which dispensed with every claim of the '954 patent. *See* Appx92.

Thus, if the Court agrees with Proxense's construction, there is no need to address its backup constitutional position. BB37-40. If the Court alternatively agrees with Appellees' construction, Proxense's constitutional argument would not impact the result of the Microsoft IPR (where Proxense never raised this issue). That decision holds every claim unpatentable. Appx92. Either way, the Court has no need to address Proxense's constitutional argument.

#### b. Proxense's Appointments Clause Arguments Have No Bearing on the Microsoft IPR

Proxense tries to avoid the futility of this issue by incorrectly claiming the Microsoft IPR was somehow "tainted" by an alleged constitutional defect in the Apple IPR. BB38-40. There is no basis for this argument.

First, contrary to Proxense's suggestion, the Board did not "rel[y] on" its decision in the Apple IPR ***itself*** to support its claim construction in the Microsoft IPR. *Id.* Rather, the Board relied on "the same [underlying] evidence" and "the same reasons." Appx61. In other words, the Board did not hold its determination in the Apple IPR was binding in the Microsoft IPR, but simply reached the same conclusion based on the same evidence and arguments. *Id.*

Second, even if the Board had relied on the Apple IPR, Proxense does not explain how that would violate the Appointments Clause. BB37-40. It does not, for example, identify any statute or rule precluding the Director from rejecting such reliance and reaching a different decision on claim construction. *See id.*

Thus, the core concern in *Arthrex I*—a statute "prevent[ing] the Director from reviewing the decisions of the PTAB"—is not even alleged to be present here, and no Appointments Clause violation could lie. 594 U.S. at 26.

Third, as discussed, Proxense forfeited any Appointments Clause challenge to the Microsoft IPR by not raising it before the agency or seeking Director Review. Although this Court has excused forfeiture of Appointments Clause arguments under narrow circumstances, *e.g.*, *Piano Factory Grp., Inc. v. Schiedmayer Celesta GmbH*, 11 F.4th 1363, 1370 n.5 (Fed. Cir. 2021), Proxense identifies no basis to excuse its forfeiture here. Nor is there any. Nothing stopped Proxense from seeking Director Review or the Director from initiating review *sua sponte*. Proxense simply elected not to pursue that right, and the Director likewise elected not to invoke that authority. Proxense's acquiescence to the finality of the Board's decision thus mirrors other circumstances in which this Court has declined to excuse forfeiture. *See, e.g.*, *Ciena Corp. v. Oyster Optics, LLC*, 958 F.3d 1157, 1160-62 (Fed. Cir. 2020).

Given that the Microsoft IPR covers all claims of the '954 patent, these reasons independently establish why it is unnecessary to reach Proxense's Appointments Clause challenge to the Apple IPR.

#### c. The Apple IPR APA Issues Resolve the Purported Constitutional Harm

Finally, to the extent the Court reaches the APA issue from the Apple IPR, that dispute also obviates Proxense's constitutional challenge. Proxense's Appointments argument raises the same "inconsistent results" theory addressed above in the Apple IPR APA section. *See* BB37 (citing Appx3189). Both challenges ask whether the Board failed to provide a "reasoned explanation" for reaching an "inconsistent result" with the '730 EPR examiner. *See id.* (constitutional argument); BB30-32 (APA attack claiming "the Board offered no reasoned explanation for its inconsistent result" with the '730 EPR).

These arguments are thus coextensive. If the Court agrees with Appellees that there is no inconsistency (*see* § V.C.3, *supra*), the purported constitutional harm vanishes. If the Court were instead to agree with Proxense, the constitutional question becomes superfluous. Either way, the Court's resolution of the Apple APA issue disposes of Proxense's constitutional argument.

### 2. The Supreme Court and Federal Circuit Have Already Rejected Proxense's Appointments Clause Argument

Should the Court reach the merits of Proxense's constitutional challenge, it should reject it. Proxense contends Acting Director Stewart unconstitutionally delegated her review authority to APJ Ankenbrand in recused cases. *See* BB37-40; Appx48 & n.2; Appx9445. Proxense argues the APJ's denial of Proxense's

Director Review request violated the Appointments Clause because a principal officer did not oversee the APJ's decision. BB37-38 (citing *Arthrex I*, 594 U.S. at 13). This argument ignores controlling precedent.

In *Arthrex II*, this Court rejected an indistinguishable argument on nearly identical facts. There, the Commissioner for Patents (an inferior officer) denied a request for Director rehearing without oversight from a principal officer. *Arthrex II*, 35 F.4th at 1332. The Commissioner performed this duty under a standing order from a prior Director due to vacancies in the Director's and Deputy Director's offices. *Id.*

The Court found no error in this arrangement. Relying heavily on the Supreme Court's reasoning in *Eaton*, this Court explained how "an inferior officer may temporarily exercise a [principal] officer's powers in his absence." *Arthrex II*, 35 F.4th at 1334 (citing *Eaton*, 169 U.S. at 343). To the Court, it was immaterial whether a principal officer oversaw the Commissioner's decision in these limited circumstances. *See id.* So long as the delegation is "temporary," the Court held, "an inferior officer can temporarily perform functions of a principal officer on an acting basis." *Id.*; *see id.* at 1333 ("[A]n inferior officer 'charged with the performance of the duty of [a] superior for a limited time, and under special and temporary conditions,' need not be Presidentially appointed and Senate confirmed." (second alteration in original) (quoting *Eaton*, 169 U.S. at 343)). The

Court found the case "indistinguishable from *Eaton*" and categorically "reject[ed] the argument that only a [principal] officer may issue final agency decisions in all circumstances." *Id.* at 1334.

As *Arthrex II* is indistinguishable from *Eaton*, this case is indistinguishable from *Arthrex II*. Like the Commissioner in *Arthrex II* and vice consul in *Eaton*, APJ Ankenbrand "was merely performing the functions and duties of the [Acting] Director in the limited period" of her recusal. *Id.*; *see Eaton*, 169 U.S. at 332-33, 343. The APJ did so under the Acting Director's directive "for a limited time, and under special and temporary conditions." *Eaton*, 169 U.S. at 343; *Arthrex II*, 35 F.4th at 1335.

The only difference between this case and *Arthrex II* is the officer who denied Director Review. This difference is of no moment. Just as Congress empowered the Secretary to appoint a Commissioner in *Arthrex II* (35 U.S.C. § 3(b)(2)(A)), it empowered him to appoint APJs. 35 U.S.C. § 6(a) ("The administrative patent judges . . . are appointed by the Secretary, in consultation with the Director."). This Congressional assent is all the Constitution requires. *See* U.S. CONST. art. II, § 2, cl. 2 ("Congress may by Law vest the Appointment of such inferior Officers, as they think proper, . . . in the Heads of Departments.").

Proxense does not meaningfully address or distinguish *Arthrex II*. BB38. All Proxense musters is a suggestion that the Acting Director should have

"delegat[ed] her authority to the Commissioner." *Id.* This response is no answer at all. Both the Commissioner and APJs are inferior officers appointed by the Secretary. *See* 35 U.S.C. §§ 3(b)(2)(A), 6(a). Whether Congress used § 3 or § 6 to authorize their appointment is irrelevant to the constitutionality of the disputed delegation. *See Arthrex II*, 35 F.4th at 1334-35 (refusing to distinguish *Eaton* on this basis). The Patent Office followed the Constitution.

Nor is there a principled distinction between the vacancies in *Arthrex II* and *Eaton* and the Acting Director's recusal here. In each case, an inferior officer performed the functions of a principal "on a temporary, acting basis." *Id.* at 1333; *see Eaton*, 169 U.S. at 343. And as in *Arthrex II* and *Eaton*, "the discharge of administrative duties would [have] be[en] seriously hindered" here if the Director needed to appoint a principal officer for review each time she recused herself. *Eaton*, 169 U.S. at 343; *Arthrex II*, 35 F.4th at 1333.

Indeed, the Acting Director's delegation here was narrower in both "time" and "condition[]" than those in *Arthrex II* and *Eaton*. *Eaton*, 169 U.S. at 343; *Arthrex II*, 35 F.4th at 1335. The delegation period before APJ Ankenbrand's denial was just 12 days (Appx48; Appx9445), whereas the delegation periods in *Arthrex II* and *Eaton* were much longer (268 and 309 days, respectively). *See Arthrex II*, 35 F.4th at 1335 (finding this timing relevant). And though the delegations in *Arthrex II* and *Eaton* respectively authorized the Commissioner and

vice consul to perform a broad set of functions, the APJ's role here was limited to "review[ing] matters concerning the . . . Board" from which the Acting Director was recused. Appx9445; *Arthrex II*, 35 F.4th at 1334 (Commissioner directed to "perform the non-exclusive functions and duties" of the Director); *Eaton*, 169 U.S. at 331-32 (vice consul asked "to take charge of the consulate and its archives").

*Arthrex II* and *Eaton* thus foreclose Proxense's constitutional argument. The Court should affirm.

## VI. CONCLUSION

For the foregoing reasons, the Court should affirm.

Dated: July 13, 2026

Respectfully submitted,

*/s/ Erika H. Arner*
Erika H. Arner
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Ave., NW
Washington, DC 20001
(571) 203-2754

Daniel C. Tucker
Joseph M. Schaffner
Taylor L. Stark
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
(571) 203-2700

*Counsel for Appellee Apple Inc.*

Respectfully submitted,

*/s/ Lauren A. Degnan*
Lauren A. Degnan
W. Karl Renner
Christopher Dryer
Benjamin J. Christoff
FISH & RICHARDSON PC
1000 Maine Ave. SW, Suite 1000
Washington, DC 20024
(202) 783-5070

*Counsel for Appellee Microsoft Corporation*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 27 and Federal Circuit Rule 27.

This brief contains 11,232 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font, Times New Roman.

/s/ Erika H. Arner
Erika H. Arner
*Attorney for Appellee Apple Inc.*